IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ERIC DWAYNE THOMPSON,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:23-cv-2056-L** |
| § | |
| **CITY OF DALLAS, et al.,** § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant City of Dallas's (the "City") Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") (Doc. 20); and Defendants Ivory R. Dodson ("Ofc. Dodson"), Thomas Guerrero ("Ofc. Guerrero"), and Brian J. Hartger's ("Sgt. Hartger" collectively "DPD Defendants")[1] Motion for Summary Judgment Based on Qualified Immunity ("Motion for Summary Judgment") (Doc. 21), both filed on July 17, 2024. On July 24, 2024, the court referred the Motion to Dismiss and Motion for Summary Judgment (collectively, "Motions") to Magistrate Judge David Horan for hearing, if necessary, and to submit to the court proposed findings and recommendations for disposition of the Motions (Docs. 24 & 25). The United States Magistrate Judge filed his Findings, Conclusions, and Recommendation ("Report I") (Doc. 27) on September 23, 2024, recommending that the court **grant** the Motion to Dismiss. The United States Magistrate Judge filed another Findings, Conclusions, and Recommendation ("Report II") (Doc. 28) on September 24, 2024, recommending that the court **grant** the Motion for Summary Judgment and **dismiss with prejudice** the claims against the Officers.

---

[1] Defendant Police Officers Terrence J. Forest and Dina M. Rodriguez were dismissed without prejudice (Doc. 17) on June 16, 2024, and they are no longer parties to this action.

Memorandum Opinion and Order – Page 1

No objections have been filed, and the 14-day period to object after service of the Reports has passed. *See* Fed. R. Civ. P. 72(b)(1)(2); 28 U.S.C. § 636(b)(1)(C). The court, after considering the Reports, Amended Complaint (Doc. 16), Motion to Dismiss, Motion for Summary Judgment, record, and applicable law; **concludes** that the findings and conclusions of the magistrate judge are correct, which are **accepted** as those of the court; and **grants** both Motions.

Also, before the court is Plaintiff's Motion for Stay of Proceedings for Medical Emergency ("Motion for Stay") (Doc. 30), filed on October 29, 2024, which was after this Memorandum Opinion and Order was written—except for the portion that addresses the Motion for Stay—but before it was filed. For the reasons that follow, the court **denies** the Motion for Stay.

I.  **Factual and Procedural History**

Plaintiff Eric DeWayne Thompson ("Plaintiff" or "Mr. Thompson") filed Plaintiff's Original Petition ("Petition") on August 7, 2023, in the 44th Judicial District Court of Dallas County, Texas, against the City of Dallas and DPD Defendants. Doc. 1-5. This action was removed to federal court on September 13, 2023. Doc. 1.

Mr. Thompson filed a document titled "Plaintiff's Original Complaint" (Doc. 16) on June 16, 2024, although earlier, he filed Plaintiff's Petition in state court. For clarity, the court will refer to the amended pleading as Plaintiff's Amended Complaint, which is the operative pleading. He brings claims pursuant to 42 U.S.C. § 1983 for: (1) unlawful arrest and prosecution through the wrongful institution of legal process in violation of the Fourth and Fourteenth Amendments to the United States Constitution; (2) unlawful seizure and arrest of a person in

violation of the Fourth Amendment; (3) violation of procedural due process for filing a false report in violation of the Fourth Amendment; (4) failure to supervise in violation of the Fourth and Fourteenth Amendment; (5) constitutional deprivation through policy, custom, or practice under municipal liability; and (6) malicious prosecution in violation of the Fourth Amendment. Doc. 16. Claims one, two, and six are against the DPD Defendants in their individual capacity; claim three is against Ofc. Dodson, in her individual capacity; claim four is against Sgt. Hartger, in his individual capacity; and claim five is against the City (Doc 16).

The court sets forth the factual allegations in the light most favorable to Plaintiff. According to Mr. Thompson, on August 13, 2021, at approximately 11:40 a.m., Officers Dodson and Guerrero stopped a 2004 silver Taurus driven by Kendra James with him in the passenger seat. Pl's. Am. Compl. ¶ 3. Mr. Thompson contends that the officers immediately began questioning him about his identity. *Id.* He contends that he refused to answer questions, give consent to the investigation, or provide his name to Ofc. Dodson. *Id.* ¶ 4. He contends that the stop lasted longer than necessary to effect the purpose of the stop; specifically, he contends that Ofc. Dodson had all the necessary information to complete the stop. *Id.* ¶ 5. Plaintiff alleges that during this encounter, Ofc. Guerrero saw his ID badge containing his name hanging on the rearview mirror, wrote it on a notepad, and provided it to Ofc. Dodson. *Id.*

Further, he contends that while the officers ran his information through the computer system, two additional DPD officers arrived at the scene while Ofc. Dodson called her supervisor, Sgt. Hartger, to the scene. *Id.* ¶ 6. Mr. Thompson contends that Ofc. Dodson instructed the other officers to remove him from the vehicle and place him in handcuffs. *Id.* ¶ 7. He alleges that they informed him that he was being arrested for outstanding warrants, and they

conducted a search of his person. *Id.* He contends that Sgt. Hartger told him that he did nothing wrong by sitting in his seat and refusing to identify himself, but the arrest was still going to be upheld because it was unusual and/or suspicious for him to refuse to give his name. *Id.* ¶ 9. Plaintiff alleges that after twenty minutes and thirty-five seconds, the operator reported that Mr. Thompson had four outstanding warrants. *Id.* ¶ 10. While he was sitting in the police car, he contends that the officers were laughing and having conversations about him. *Id.* ¶ 11.

He states that he was in Dallas County Jail from August 13, 2021, until August 19, 2021, and on March 32, [*sic*] 2022, the charges were dismissed without incident because the District Attorney found that no probable cause existed to believe that Plaintiff committed the crime of failure to identify. *Id.* ¶ 13. As a result, Mr. Thompson seeks to hold Defendants liable and to be compensated for his alleged injuries. *Id.* ¶ 15.

## II.   Magistrate Judge's Report I (Doc. 27)

Magistrate Judge Horan determined that Mr. Thompson did not plausibly allege that an official policy of the City of Dallas was the moving force behind any alleged constitutional violation. Report I 7. Allegations that are limited to events surrounding Plaintiff's arrest cannot, alone, constitute a *de facto* policy. Report I 8 (citation omitted). The magistrate judge found that Mr. Thompson devoted several paragraphs in his Amended Complaint (Doc. 16) that discussed several allegedly unconstitutional policies of the City, but they do not raise a reasonable inference that an official municipal policy was the moving force behind a constitutional violation. Report I 8 (citing Doc. 16 at 8). Report I states:

> Thompson first alleges that he "was unlawfully arrested as a result of several faulty customs, policies and/or practices at the City of Dallas and DPD," namely the City's "failing to enforce the need for reasonable suspicion to prolong

>a traffic stop"; the City's "condoning dishonesty in DPD investigations and incident reports"; and that "DPD officers routinely engage in race-based policing." *Id*. (caps omitted).

*Id.*

To state a claim under *Monell,*[2] a plaintiff must sufficiently allege: "(1) that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality; (2) that the allegedly unconstitutional action constitutes a custom or policy; and (3) that there was a violation of constitutional rights whose moving force is the policy or custom. *Brown v. Tarrant Cnty., Texas,* 985 F.3d 489, 497 (5th Cir. 2021) (internal quotation marks and citations omitted). The magistrate judge applied the first prong as set forth in *Monell* to Plaintiff's claims and determined that the Amended Complaint failed to plausibly allege an official policy. Report I 11 (citation omitted). For an official policy to be unconstitutional, it must affirmatively allow or compel unconstitutional conduct. Report I 11 (citation omitted). The magistrate judge determined that Mr. Thompson does not allege a specific, written official policy promulgated by the City or a policymaker. Instead, Plaintiff relies on allegations of widespread practices or customs. Report I 13. The magistrate judge further determined that the four incidents cited by Plaintiff over a ten-year period do not allow the court to reasonably infer that a widespread pattern of fairly similar violations exists such that the City of Dallas's governing body would have knowledge of the objectionable conduct. Report I 13 (citing Doc. 16, ¶ 143; *Webster v. City of Hous.*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc) (per curiam) (citation omitted); *see also Mohamed for A.M. v. Irving Indep. Sch. Dist.,* 252 F. Supp. 3d 602, 618 (N.D. Tex. 2017) ("Plaintiff must allege a

---

[2] *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

**Memorandum Opinion and Order – Page 5**

constitutional deprivation that was more than an isolated incident but was caused by a practice that was sufficiently widespread to constitute a custom having the force of law.") (citation omitted).

Further, the magistrate judge held that to the extent that Mr. Thompson relies on statistics to prove a pattern of incidents similar to the alleged constitutional violations, he fails to connect the statistics to numerous past cases; thus, the statistics alone do not plausibly plead an official policy or provide notice of a widespread pattern of similar violations. Report I 15 (citing Doc. 16 and *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 536-37 (W.D. Tex. 2017)). In his Amended Complaint, Plaintiff identifies alleged policymakers, but the magistrate judge found that he failed to plausibly allege facts that would allow the court to reasonably infer that the challenged policy was promulgated or ratified by a policymaker. Report I 16 (citing Doc. 16 and *Groden v. City of Dall., Tex.*, 826 F.3d 280, 284-85 (5th Cir. 2016) (citation omitted)). The magistrate judge further determined that aside from the unsupported conclusions, Mr. Thompson's Amended Complaint fails to connect the DPD Defendants' alleged acts to a City policymaker. Because Plaintiff fails to plausibly allege the first two prongs of *Monell*, the magistrate judge did not take up the third, moving-force causation, prong. Report I 17 (citing *Brown*, 985 F.3d at 497 & n.11 (citation omitted)).

The magistrate judge also addressed Plaintiff's attempt to establish *Monell* liability under the ratification theory, which is a narrow exception to the requirement that all three prongs be met. Report I 17 (citing Doc. 16 ¶ 137). To assert a successful claim under the ratification theory, Plaintiff must show that an authorized policymaker

approved the DPD Defendants' actions, and that the basis of the ratification is chargeable to the City. Report I 17 (citation omitted). Report I held that the Amended Complaint does not contain allegations from which the court can reasonably infer that sufficiently extreme conduct occurred or that a policymaker of the City approved of and ratified the alleged conduct of the officers. Report I 18-19.

### III.    Magistrate Judge's Report II (Doc. 28)

In Report II, the magistrate judge recommends that the court grant the Motion for Summary Judgment because Mr. Thompson has not met his burden to overcome each assertion of qualified immunity. Report II 13. The Report II states as follows:

> Thompson's various Section 1983 claims—unlawful arrest and prosecution through the wrongful institution of legal process; unlawful seizure and arrest of a person; malicious criminal prosecution; violation of procedural due process for filing a false report (against just Officer Dodson); and failure to supervise (against just Officer Hartger)—are rooted in his contentions that the Officers "knew or should have known that they did not have probable cause to arrest [him] on the charge of failure to identify fugitive from justice"; that the Officers "conducted a reckless and unlawful prolonged traffic stop investigation"; that the Officers "knowingly included false statements and material omissions in the incident report used to justify [his] arrest"; and that, "[a]bsent this misconduct, the arrest and subsequent prosecution of [Thompson] could not and would not have been pursued." Dkt. No. 16, ¶¶ 151 & 152; *see also, e.g., id*., ¶¶ 165, 170, 175, 187, & 203-07.

Report II 14.

The magistrate judge viewed the evidence in the light most favorable to Plaintiff, the nonmovant, and determined that the unverified allegations in the Amended Complaint could not be considered as summary judgment evidence.[3] Report II 14. Further, the magistrate judge

---

[3] This failure, of course, does not permit a court to enter a "default" summary judgment against DPD Defendants. *Eversley v. MBank Dallas,* 843 F.2d 172, 174 (5th Cir.1988). A court, however, is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Id.* Normally, "[a] summary judgment nonmovant who

determined that Mr. Thompson did not respond to the Motion for Summary Judgment, and as a result, he presented no evidence on his own that would defeat qualified immunity's clearly-established prong. Report II 13. Accordingly, the magistrate judge examined the evidence before him, starting with the accounts of Mr. Thompson and Ofc. Guerrero. Report II 14-18 (citing Doc. 23).

Magistrate Judge Horan determined that the reasonableness of the traffic stop was not contested and that the evidence supports that it was also reasonable to make the stop based on the improper right turn. Report II 20 (citation omitted). He further determined that the officers' actions were reasonably related in scope to the circumstances. *Id.* (citation omitted). The magistrate judge rejected Mr. Thompson's illegal seizure argument and held that obtaining his name on his work badge to run a computer check did not count as a seizure because it was in plain view and obtained during a justified and reasonable *Terry*[4] stop. Report II 21 (citation omitted). As a result, the magistrate judge held that Mr. Thompson has not shown an obvious violation of clearly established federal law based on the *Terry* stop or the officers' subsequent actions because it was reasonable (1) to request that he identify himself and (2) to run the computer check based on the name obtained from a badge in plain sight. Report II 22.

Next the magistrate judge examined Mr. Thompson's Fourth Amendment malicious prosecution claim, which requires him to show the absence of probable cause for the resulting criminal proceeding. Report II 22 (citation omitted). As the evidence demonstrates, Mr. Thompson was prosecuted for, among other charges, outstanding warrants, which he does not

---

does not respond to the motion is relegated to his unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D.Tex.1996) (*citing Solo Serve Corp. v. Westowne Assocs.,* 929 F.2d 160, 165 (5th Cir.1991)).

[4] *Terry v. Ohio,* 392 U.S. 1 (1968).

**Memorandum Opinion and Order – Page 8**

dispute. Report II 22. The evidence does not raise a genuine dispute of material fact that the supervisory official, Sgt. Hartger, acted with deliberate indifference toward Plaintiff, or that he executed unconstitutional policies that causally resulted in injury to Mr. Thompson. Report II 23 (citation omitted). The court agrees.

"The deliberate indifference standard is a high one." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty.*, 520 U.S. at 410. This term is best defined and summarized as follows:

> To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety. The state actor's actual knowledge is critical to the inquiry—a failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, does not rise to the level of deliberate indifference.

*Whitely v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (citations, internal quotation marks, and brackets omitted). The magistrate judge determined that the evidence was not sufficient for Mr. Thompson to carry his burden as it relates to qualified immunity's clearly-established prong. Report II 24 (citation omitted).

### IV. Amendment of Pleadings

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.,* 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the

Memorandum Opinion and Order – Page 9

movant, repeated failure to cure deficiencies by amendments previouslyallowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman,* 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.,* 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Plaintiff did not request to amend his pleadings in responding to the City's Motion to Dismiss or the DPD Defendants' Motion for Summary Judgment, and he filed no objections to the magistrate judge's Reports. "A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals." *United States ex rel. Willard v. Humana Health of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (citation omitted). Finally, as Mr. Thompson has failed to respond to both Motions, he has abandoned or waived his right to do so, and he should not be allowed to amend under such circumstances. For these reasons and because Mr. Thompson previously amended his state court Petition, the court determines that he has pleaded his "best case" such that further amendment, even if requested and allowed, would be futile and unnecessarily delay the resolution of this litigation. Accordingly, the court will not allow Plaintiff, who is represented by competent counsel, to further amend his pleadings.

## V.    Motion for Stay

As stated earlier, after this Memorandum Opinion and Order was written but before it was filed, Plaintiff filed his Motion for Stay on October 29, 2024. In his Motion for Stay, he states that his counsel is currently unable to proceed because of severe medical issues (Doc. 30 at 3). He contends that a stay would not unduly prejudice any nonmoving party and that if the Motion for Stay is denied, his counsel will not be able to appear for approaching court settings

and/or address matters pending before the court. *Id.* In Plaintiff's counsel's Declaration made under penalty of perjury, she states that she has been sick since July 2024 and will need at least six to nine months to recover; and that the timeline is "uncertain," but it is based on the advice of her doctor. *Id.* Accordingly, Plaintiff has requested the court to grant the Motion for Stay and allow a stay of six to nine months so his counsel may receive medical treatment, or for him to hire new counsel. *Id.* at 2.

The court is sympathetic to Plaintiff and his counsel's circumstances; however, sympathy is not the predominant factor for the court to consider. First, neither Plaintiff nor his counsel has apprised the court of the steps that were taken to alert or inform it that counsel was experiencing medical issues until the Motion for Stay was filed. In other words, her health issues commenced around July 12, 2024 (Doc. 30 at 1,3). As earlier noted, both dispositive motions were filed on July 17, 2024, approximately five days after Plaintiff's counsel began having her health issues. Further, Plaintiff's counsel states, "My ability to practice law has been drastically limited, nearly to non-practice by the matters impacting my health. I have stopped accept[ing] any new cases since then, [and] have had to withdraw from and/or drop many other matters." *Id.* at 3. No adequate explanation is provided as to why Plaintiff waited well over four months to file his Motion for Stay, especially since his counsel was able to "withdraw from and/or drop other matters" during her illness. *Id.* Finally, the Declaration states in conclusory fashion that Plaintiff's counsel has made "drastic attempts to find substitute counsel for this case to no avail." *Id.* Because of this conclusory statement, the court is unable to consider the steps Plaintiff took, or evaluate whether good cause exists to grant the Motion for Stay.

**Memorandum Opinion and Order – Page 11**

Second, the court does not agree with Plaintiff's contention that no party will be prejudiced. This case involves qualified immunity that has been asserted as an affirmative defense by the DPD Defendants. They will suffer prejudice. This is so because qualified immunity "is an *immunity from suit* rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). For this reason, the issue of qualified immunity must be decided "at the earliest possible stage of the litigation." *Carswell v. Camp,* 54 F.4th 307, 310 (5th Cir. 2022) (citation omitted). Staying or delaying this case denies DPD Defendants of the rights afforded by the doctrine of qualified immunity. Likewise, the City should not be put in the position of having a ruling delayed because of no fault on its part.

Third, Plaintiff has not shown the court that he exercised diligence in filing the Motion for Stay. Despite counsel's medical issues, she was able to withdraw from other legal matters. The court is at a loss to understand why counsel was able to take appropriate action and withdraw from other matters, yet not do so in this case in a timely matter. As the court has the discretion and inherent authority to manage and control its docket, it **concludes** that the factors considered by the court weigh against granting the Motion for Stay and allowing Plaintiff to have "a second bite at the apple." *See Reliance Ins. Co. v. Louisiana Land & Expl.,* 110 F.3d 253, 258 (5th Cir. 1997) (citation omitted).

VI.    Conclusion

Having considered the Reports, Complaint, Motion to Dismiss, Motion for Summary Judgment, record, and applicable law, the court **determines** that the magistrate judge's findings and conclusions in Reports I and II are correct, and **accepts** them as those of the court.

Accordingly, the court **grants** Defendant City of Dallas's Motion to Dismiss (Doc. 27); **grants** Defendants Ivory R. Dodson, Thomas Guerrero, and Brian J. Hartger's Motion for Summary Judgment (Doc. 28); and **dismisses with prejudice** this action. Further, for the reasons previously stated, the court **denies** Plaintiff's Motion for Stay. (Doc. 30)  The court will issue judgment by a separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 31st day of October, 2024.

_____
Sam A. Lindsay
United States District Judge